**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

VIRGINIA ANN MEARS,

    Plaintiff,

vs.                                                                         CASE NO. 3:12-cv-1008-J-TEM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.
_____

## ORDER AND OPINION

This case is before the Court on Plaintiff's complaint (Doc. #1). Plaintiff seeks review of the final decision of the Commissioner of Social Security that denied Plaintiff's claim for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*

Plaintiff filed a memorandum in opposition to the Commissioner's decision (Doc. #23, Plaintiff's Brief). Defendant filed a memorandum in support of the decision to deny disability benefits (Doc. #27, Defendant's Brief). The Commissioner has filed the transcript of the underlying administrative record and evidence (hereinafter referred to as "Tr." followed by the appropriate page number). Both parties consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by the Order of Reference dated December 3, 2012 (Doc. #15).

The Court has reviewed the record and has given it due consideration in its entirety, including the arguments presented by the parties in their briefs and the materials provided in the transcript of the underlying proceedings. Upon review of the record, the Court found

the issues raised by Plaintiff were fully briefed and concluded oral argument would not benefit the Court in making its determinations. Accordingly, the matter has been decided on the written record. For the reasons set out herein, the Commissioner's decision is **AFFIRMED**.

## I. Procedural History

Plaintiff Virginia Ann Mears filed for DIB on December 20, 2006, alleging disability as of October 1, 2003 (Tr. 321). Her initial application was denied, as was her request for reconsideration (Tr. 179-81, 185-88). Plaintiff timely requested a hearing, the first of which was held on November 18, 2008, in Jacksonville, Florida, before Administrative Law Judge (ALJ) John D. Thompson (Tr. 134-58). A second hearing was held on February 17, 2009, so that the ALJ could obtain testimony from a medical expert (Tr. 99-133). Plaintiff's application was then denied by the ALJ's decision dated March 9, 2009 (Tr. 163-172). Plaintiff requested review of the ALJ's decision, and on December 8, 2009, the Appeals Council (AC) remanded the case to the ALJ to obtain additional treatment records from Dr. Jaime Revollo, M.D., for the period at issue (Tr.173-78). A third hearing was held by ALJ Thompson on April 14, 2010 (Tr. 37-133). Plaintiff appeared and testified at the hearing in person. Medical expert (ME) Dr. Javier Barquet and vocational expert (VE) William M. Jenkins testified via telephone (Tr. 39-60, 70-89, 90-97). Plaintiff's current counsel of record, William E. Horne, Jr., was present at the April 14, 2010 hearing. On May 11, 2010, the ALJ issued an unfavorable decision (Tr. 17-36). Plaintiff requested review of the decision by the AC; however, the AC denied her request, making the hearing decision the final decision of the Commissioner (Tr. 1-6). This action followed.

## II. Standard of Review and The ALJ Decision

A plaintiff is entitled to disability benefits under the Social Security Act only if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i-v).[1] Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts temporarily to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). Here, Mears' claim of disability was denied at step four with the ALJ's determination that she could return to past relevant work as she had performed it prior to her date last insured (Tr. 28-29).

This Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988). Substantial evidence is more than a scintilla, but less than a preponderance. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). When the Commissioner's decision is supported by substantial evidence, the Court is constrained to affirm even if it would have reached a contrary result as finder of fact. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

---

[1] Unless otherwise specified, all references to 20 C.F.R. will be to the 2012 edition.

In all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Yuckert*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations. 20 C.F.R. § 404.1512(c).

### III. Discussion

Plaintiff was born on April 3, 1950 (Tr. 294) and was fifty-five years old at the time her eligibility for DIB expired. Mears was last insured for benefits through September 30, 2005, and must establish disability under the present application on or before that date (Tr. 22). Plaintiff received a high-school diploma, but no further education (Tr. 137-38). She has past relevant work of performing janitorial services in office buildings (Tr. 79).

Mears alleges two issues of error on appeal. First, she challenges whether the Commissioner properly considered how peripheral neuropathy affected the residual functional capacity determination. Plaintiff's Brief at 5-11. Second, Mears questions "whether or not the Commissioner substantially evaluated the treating opinion offered by Jamie Revollo, M.D.," a treating physician. Plaintiff's Brief at 12-14.

**Consideration of Plaintiff's Claimed Peripheral Neuropathy**

Plaintiff asserts the ALJ erred in not finding peripheral neuropathy was one of her severe impairments at step two.[2] Plaintiff's Brief at 7. Plaintiff relies on her testimony and

---

[2]Peripheral neuropathy is the result of nerve damage and often causes weakness, numbness and pain, usually in the hands and feet. The pain of peripheral neuropathy is

4

testimony of the medical examiner, Dr. Javier Barquet, during the April 14, 2010 hearing as support for this assertion. *Id.* at 5-11. Plaintiff claims the consequence of this error is a mis-calculation of her residual functional capacity (RFC).[3] *Id.* at 11.

At step two of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. 20 C.F.R. § 404.1520(c). By definition, this inquiry is a threshold inquiry: "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). An impairment is not severe if the abnormality is so slight and its effect so minimal that it clearly would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *McDaniel v. Bowen*, 800 F. 2d 1026, 1031 (11th Cir. 1986). A claimant need show only that his or her impairment is not so slight and its effect not so minimal. *Id.* However, the claimant has the burden of proving that he or she has severe physical or mental impairments. *See Bowen v. Yuckert*, 482 U.S. at 146 n.5.

---

described as tingling or burning, or a loss of sensation akin to the feeling of wearing a thin stocking or glove. Peripheral neuropathy can result from problems such as traumatic injuries, infections, or exposure to toxins, but one of the most common causes is diabetes. Information found at http://www.mayoclinic.com/health/peripheral-neuropathy/DS00131 (last visited 9/28/2013).

[3]Plaintiff further states the RFC "mis-calculation" led "to the mis-placed reliance upon a vocational hypothetical that did not comprehensively describe [her] impairments." Plaintiff's Brief at 11. The Court finds this argument is without merit. As discussed above, Plaintiff did not meet her burden of providing evidence any peripheral neuropathy affected her ability to work. As discussed further in body of this opinion, there is insufficient foundational support for Plaintiff's "miscalculated RFC" argument. Substantial evidence supports the ALJ's assessment of Plaintiff's RFC. Consequently, the "misplaced reliance" argument fails.

ALJ Thompson found Plaintiff's history of diabetes mellitus was a severe impairment, as were her history of obesity and history of hypertension (Tr. 22). Plaintiff suggests her neuropathy may or may not have been secondary to the diabetes and the ALJ's decision evidences a failure to have adequately considered how her peripheral neuropathy affected her residual functional capacity. Plaintiff's Brief at 10.

In this case, there is scant evidence in the record to support Plaintiff's assertions of neuropathy prior to her date last insured. The Court conducted an exhaustive search of the administrative record. The medical records contain only three references to neuropathy or its symptoms prior to the expiration of Plaintiff's eligibility for DIB on September 30, 2005 (Tr. 962, treatment note by Dr. Revollo dated September 27, 2002 that includes "diabetic neuropathy" diagnosis and note of decreased prick sensation, right foot greater than left foot; Tr. 959, treatment note by Dr. Revollo dated June 20, 2003 that includes diagnosis of "diabetic neuropathy" and reference to a tender left thigh; and, Tr. 463, treatment note by Dr. Revollo dated November 2, 2004 that includes notation of "swelling bilateral leg pain"). Furthermore, the Diabetic Progress Record form, used by Dr. Revollo for his exam and treatment notes on the majority of Plaintiff's office visits, contains a section for physical examination checks with a detailed section for examination of the feet (*see* Tr. 553-55, 955-69, 992-94). Except for the note on September 27, 2002, discussed above, Dr. Revollo routinely checked all categories as normal on examination of Plaintiff's feet for vascular status, skin condition and sensation. *See id.* While Plaintiff's history of diabetes is well documented, the asserted neuropathy is not nor are any other limiting effects from the diabetes.

The relevant period, from Plaintiff's alleged onset date of October 1, 2003 to the

September 30 2005 date last insured for DIB, is key to the disability determination in this case. Treatment notes and records after September 30, 2005 indicate a possible deterioration in Plaintiff's neuropathy condition. After the DLI, there are a number of references to either "neuropathy" or its resultant symptoms (*see, e.g.*, Tr. 765, a hospital note dated August 24, 2009 that states in part, "Her nerve conduction studies also showed features of a severe sensorimotor predominantly axonal peripheral neuropathy."). However, any deterioration in Plaintiff's condition after the date she was last insured for DIB is a matter for the finder of fact to make on an application other than the one currently under review.

Plaintiff's assertion that peripheral neuropathy should have been found a severe impairment in this case is lacking the requisite foundational support. The effects of an impairment are measured by the limitations on the ability to work. *See* 20 C.F.R. §§ 404.1520(c), 404.1521 (limitations from an impairment determine whether it is severe). Nothing in the record suggests Plaintiff's neuropathy affected her ability to work prior to September 30, 2005. The two instances in which Dr. Revollo diagnosed Plaintiff with diabetic neuropathy say nothing about whether the neuropathy affected her ability to work. *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir.1986) (indicating the severity of an impairment is measured by its affect upon work ability, not merely by a deviation from medical standards of normality); *see also Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002) (a diagnosis alone is insufficient to support finding an impairment is severe). Similarly, what Dr. Barquet believed were truthful statements by Ms. Mears at the 2010 hearing fails to establish what impact, if any, the neuropathy may have had on her ability to work before her date last insured in September 2005.

7

Although Plaintiff's testimony at the 2010 hearing led Dr. Barquet to alter his opinion slightly on the type of restrictions he viewed as appropriate for Plaintiff's residual functional capacity, such an opinion, standing on its own, is not substantial evidence to find error with the ALJ's assessment of Mears' RFC. The question before the Court is does substantial evidence support the ALJ's RFC finding. Whether other evidence supports a contrary finding is not for this Court to discern. Therefore, the Court now turns its attention to whether substantial evidence supports the ALJ's assessment of Plaintiff's RFC, which does not include any limitation arising out of Plaintiff's claimed neuropathy.

The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work. 20 C.F.R. § 404.1545. The RFC is "the most [Plaintiff] can do despite [Plaintiff's] limitations. *Id.* In evaluating a claimant's RFC, the ALJ is obliged to consider all of the claimant's impairments. *Id.* In this case, the ALJ ultimately found Plaintiff had the residual functional capacity to perform a full range of light work (Tr. 24). Specifically, the ALJ found:

> through the date last insured, the claimant had the [RFC] to perform the full range of light work as defined in 20 CFR (sic) 404.1567(b). The claimant could lift and/or carry 20 pounds occasionally and 10 pounds or less more frequently. She could sit for six hours in an eight hour day and stand/walk for six hours in an eight hour day with unlimited push-pulling of arm and foot/pedal controls within the above-described weight limits. Postural activities can be performed frequently. The claimant had no manipulative, visual, communicative or environmental limitations.

*Id.* In making these findings, the ALJ expressly stated he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20

8

[C.F.R. §§] 404.1529 and SSRs 96-4p and 96-7p" (Tr. 24).

The Eleventh Circuit has noted that the focus of any RFC assessment is on the doctors' evaluations of a claimant's condition and the resulting medical consequences. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An ALJ must consider and evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). In this instance, the ALJ expressly considered and evaluated every medical opinion in the record. The limitations Dr. Barquet ultimately incorporated into his opinion of Mears' residual functional capacity admittedly were based solely on the symptoms to which she testified at the 2010 hearing (Tr. 71). ALJ Thompson correctly found there was no cogent medical reason to accept the postural restrictions Dr. Barquet assessed based on Plaintiff's testimony. *See* 20 C.F.R. §§ 404.1528, 404.1529 (requiring more than a claimant's statements to establish an impairment). As discussed in detail below, the ALJ had good cause to discount the medical source statement and opinion submitted by Dr. Jaime Revollo. The opinions of the reviewing physicians and the earlier medical expert, Dr. Paul Boyce, M.D., when considered in combination with the medical records, constitute substantial evidence in support of Plaintiff's residual functional capacity as determined by ALJ Thompson. *See* 20 C.F.R. § 404.1546(c) (the administrative law judge is responsible for assessing the claimant's RFC at the administrative hearing level).

In sum, Plaintiff did not establish peripheral neuropathy affected her ability to work prior to her date last insured. The Court finds no error in the ALJ's step two finding and further finds substantial evidence supports the ALJ's assessment of Mears' residual functional capacity.

**Treating Physician Opinion**

Plaintiff argues that the ALJ failed to properly evaluate the medical opinion evidence from Dr. Jaime Revollo, her treating physician. Plaintiff's Brief at 12. Specifically, Plaintiff argues that the ALJ's decision "failed to accurately acknowledge the essence of what Dr. Revollo actually recorded" by having "hurriedly read [through] Dr. Revollo's opinion." *Id.* at 12-13. The Court disagrees.

Plaintiff testified she began seeing Dr. Revollo in October 1996 (Tr. 145). Treatment records of Plaintiff's care by Dr. Revollo from August 2001 through January 2010 are contained within the administrative record (Tr. 457-68, 553-57, 951-1006). As discussed in some detail above, Dr. Revollo's treatment notes prior to September 30, 2005 reflect little substantive information other than Ms. Mears was routinely seen for diabetes follow-up and the physical examinations had primarily normal findings.

Nevertheless, in a Medical Source Statement of Ability to Do Work-Related Activities (Physical) dated December 23, 2008, Dr. Revollo checked off that Ms. Mears could never perform any climbing, balancing, stooping, kneeling, crouching, crawling, pushing or pulling of leg or arm controls, she had only limited ability in reaching, handling, fingering, feeling and seeing, yet she had no environmental restrictions from heights, moving machinery, temperature extremes, chemicals, dust or noise due to her impairments (Tr. 953). He also marked that the most restrictive categories on the form reflected Ms. Mears' ability to lift and/or carry any weight, to stand, to sit and to walk (Tr. 952). Dr. Revollo wrote that assessment covered the period of time between 1986 through September 30, 2005, and was based on Ms. Mears' multiple medical conditions that included uncontrolled and fluctuating glucose, fluctuating blood pressure, and frequently needed medication

adjustments that made her symptoms more pronounced and her unable to hold a steady job (Tr. 953-54). Nowhere on the form did Dr. Revollo report any objective medical findings to support the extreme restrictions. In fact, this source statement initially was provided to the Social Security Administration in support of Plaintiff's DIB application without any treatment notes from Dr. Revollo (*see* Tr. 176-78, Order of Appeals Council Remanding Case to Administrative Law Judge to obtain treating records from Dr. Jaime Revollo for the relevant time frame prior to the DLI and to include December 23, 2008 medical source statement referenced in the ALJ's Decision in the electronic record of the case).

In a "To Whom It May Concern" letter dated January 25, 2010, Dr. Revollo stated he had marked the minimum ability to perform categories on the "form from the Social Security Disability" that Ms. Mears had given him, but he actually believed she was limited to lifting two to three pounds at the maximum, to sitting for only a few minutes, and that standing or walking less than two hours in an eight hour work day surpassed her ability (Tr. 556). He further remarked that Ms. Mears had deteriorated since 2005. *Id.*

The case law and the Regulations require the ALJ to give substantial weight to the opinion, diagnosis and medical evidence of a treating physician unless there good cause to do otherwise. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d at 583; 20 C.F.R. § 404.1527(d). The Eleventh Circuit has concluded "good cause" exists when: (1) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records; (2) the treating physician's opinion was not bolstered by the evidence; or, (3) the evidence supported a contrary finding. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d at 1440).

Here, the ALJ gave Dr. Revollo's opinion "little weight" and had good cause to do so. ALJ Thompson correctly found the "rather severe functional assessment offered by this treating physician [was not] supported by his own treatment records which . . . contain very little in the way of any exam findings or any other medical information that could reasonably correlate with the functional limitations offered. . ." (Tr. 25-26). In other words, Dr. Revollo's opinion of Plaintiff's condition as of September 30, 2005 is inconsistent with his treatment records of Plaintiff's care. Contrary to Plaintiff's assertion that the ALJ failed to accurately acknowledge and hurriedly read through Dr. Revollo's opinion, the ALJ devoted a significant portion of his decision to discussion of this opinion evidence and his reasons for affording it little weight (*see* Tr. 25-27). The Court's thorough review of the record reveals no medical documents or other opinion evidence support the extreme limitations Dr. Revollo reported on Plaintiff's ability to work prior to September 30, 2005. Conversely, the opinion evidence from the two medical experts, who reviewed the record, heard Plaintiff's testimony and testified themselves, bolster the ALJ's determination to afford little weight to Dr. Revollo's opinion statements. Thus, the Court finds no error in ALJ Thompson's consideration of the treating physician's opinion in this case.

## IV. Conclusion

Upon review of the ALJ's decision and the underlying record, the Court finds substantial evidence supports the ALJ's factual findings, which were made in accordance with the applicable law and Regulations. For the reasons stated herein, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). Each party shall bear its own costs and fees. The Clerk is directed to enter judgment consistent with

this Order and Opinion and close the file.

      **DONE AND ORDERED** at Jacksonville, Florida this 30th day of September, 2013.

*/s/ Thomas E. Morris*
THOMAS E. MORRIS
United States Magistrate Judge

Copies to all counsel of record